## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

CHRIST K.,

        *Plaintiff,*               CASE NO. 22-cv-12870

                                 DISTRICT JUDGE GEORGE CARAM STEETH

*v.*                           MAGISTRATE JUDGE PATRICIA T. MORRIS

KILOLO KIJAKAZI,
Acting Commissioner
Social Security Administration,

        *Defendant.*

_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON CROSS-MOTIONS FOR SUMMARY JUDGMENT (ECF Nos. 10, 12)

## I.  RECOMMENDATION

For the reasons set forth below, **IT IS RECOMMENDED** that Plaintiff Christ K.'s Motion for Summary Judgment be **DENIED** (ECF No. 10), Defendant's Motion for Summary Judgment be **GRANTED** (ECF No. 12), and the Commissioner's final decision be **AFFIRMED**.

## II.  REPORT

### A.  Introduction and Procedural History

Plaintiff applied for Disability Insurance Benefits and Supplemental Security Income benefits on June 5, 2020.  (ECF No. 6, PageID.133, 135).  Plaintiff alleged he became disabled on May 27, 2020.  (*Id.* at PageID.137).  The Commissioner denied these

1

claims initially on October 5, 2020 and upon reconsideration on August 25, 2021. (*Id.* at PageID.156, 164, 197, 200). Plaintiff then requested a hearing before an administrative law judge ("ALJ"), which took place on December 13, 2021. (*Id.* at PageID.42, 61). The ALJ issued a decision on January 21, 2022, finding that Plaintiff was not disabled. (*Id.* at PageID.54). The Appeals Council denied review on September 30, 2022. (*Id.* at PageID.29). Plaintiff sought judicial review on November 28, 2022. (ECF No. 1). The parties have filed cross-motions for summary judgment and briefing is complete. (ECF Nos. 10, 12).

## B. Standard of Review

The Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). The district court's review is restricted solely to determining whether the "Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Sullivan v. Comm'r of Soc. Sec.*, 595 F. App'x. 502, 506 (6th Cir. 2014) (internal quotation marks omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks omitted). "[T]he threshold for such evidentiary sufficiency is not high. . . . It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).

The Court must examine the administrative record as a whole, and may consider

any evidence in the record, regardless of whether it has been cited by the ALJ. *See Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). The Court will not "try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Id.* at 286 (internal citations omitted).

### C. Framework for Disability Determinations

Disability benefits are available only to those with a "disability." *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means the inability

> to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months.

42 U.S.C. § 1382c(a)(3)(A). The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled.

> (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement . . . or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled.

3

(iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled.

(iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled.

(v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.

20 C.F.R. § 404.1520; *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001).  "Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by [his or] her impairments and the fact that [he or] she is precluded from performing [his or] her past relevant work."  *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).  The claimant must provide evidence establishing the residual functional capacity, which "is the most [the claimant] can still do despite [his or her] limitations," and is measured using "all the relevant evidence in [the] case record."  20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

The burden transfers to the Commissioner if the analysis reaches the fifth step without a finding that the claimant is not disabled.  *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006).  At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [the claimant] could

perform given [his or] her RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g)).

### D. ALJ Findings

Following the five-step sequential analysis, the ALJ determined that Plaintiff was not disabled. (ECF No. 6, PageID.43). At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity ("SGA") since May 27, 2020, the alleged onset date. (*Id.* at PageID.45). At step two, the ALJ concluded that Plaintiff had the following severe impairments: diabetes mellitus with polyneuropathy, obesity, and cervical and lumbar spondylosis with lumbar radiculopathy. (*Id.*). At step three, the ALJ decided that none of Plaintiff's severe impairments, individually or collectively, met or medically equaled a listed impairment. (*Id.* at PageID.46). Next, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform sedentary work, except that he can occasionally climb stairs, crouch, crawl, kneel, stoop, bend, and balance as defined in the Selected Characteristics of Occupations. (*Id.* at PageID.47). He must also avoid workplace hazards such as "dangerous, moving machinery and unprotected heights," and thus is not able to "climb ladders/ropes/scaffolding." (*Id.* at PageID.47). At step four, the ALJ determined that Plaintiff is capable of performing his past relevant work as a survey worker clerk. (*Id.* at PageID.52–53). Accordingly, Plaintiff was found not to have been under a disability, as defined in the Social Security Act, from May 27, 2020, through the date of the decision. (*Id.* at PageID.53).

### E. Administrative Record

#### 1. Overview of Medical Evidence

Plaintiff submitted a succinct overview of Plaintiff's medical conditions which the Commissioner did not contest for the purposes of their respective motions. (ECF No. 10, PageID.1272–73). For the purposes of addressing the pending dispositive motions, the undersigned adopts Plaintiff's summary of Plaintiff's medical conditions.

#### 2. Testimony

##### a. Plaintiff Testimony

During the December 13, 2021 hearing, Plaintiff provided testimony regarding his age, education history, work history, and his health issues. (ECF No. 6, PageID.68–93). Plaintiff's testimony regarding his employment at Morepace is of particular relevance to the pending dispositive motions. (*Id.* at PageID.74). Plaintiff categorized this employment as a "sporadic job" where he was a "market research interview, survey researcher." (*Id.*). Depending on the year, Plaintiff would work between 20 to 35 hours a week on his assigned project "conducting surveys and focus groups" in his cubicle. (*Id.*). During his employment, at times there were gaps ranging between at least a month to at most three months. (*Id.* at PageID.75). During follow-up questioning from the ALJ, Plaintiff testified that during 2010 he worked 10.5 months at Morepace which resulted in the ALJ finding that it qualified as SGA. (*Id.* at PageID.86). Plaintiff's counsel raised at the end of the hearing that this position does not meet the SGE threshold as it was a sporadic position. (*Id.* at PageID.103).

**b. Vocational Expert Testimony**

Dewey Franklin, vocational expert ("VE"), provided testimony during the administrative hearing regarding Plaintiff's previous positions as a (i) customer service representative, (ii) survey worker clerk, (iii) prep cook, (iv) line cook, (v) baker, (vi) pastry cook, and (vii) breakfast short order cook. (*Id.* at PageID.93– 103). In regard to the survey worker clerk position, he testified that Plaintiff's employment at Morepace as a survey worker clerk had an SVP rating of 2, which was unskilled. (*Id.* at PageID.96). The strength level is light per the DOT and sedentary as performed by Plaintiff. (*Id.*).

The ALJ then asked the VE if a hypothetical person, possessing the conditions listed below, would be able to perform any of the previously identified jobs as performed in the national economy or as Plaintiff previously performed them: (i) a person who is the same age as Plaintiff with the same education and past work experiences; (ii) "limited to the full range of a light exertional job along with occasionally climbing stairs or crouching or crawling or kneeling, stooping, bending or balancing as that term is defined in the SCO"; and (iii) not able to work near hazards which would mean "he is not able to climb ladders, ropes or scaffolding or work at unprotected heights around dangerous moving machinery." (*Id.* at PageID.97). The VE testified that such an individual would be able to perform the positions of customer service representative and survey worker clerk. (*Id.*). The ALJ noted at this point that he was "on the fence with [the] survey worked clerk and the customer rep." (*Id.* at PageID.98). The ALJ then confirmed that these jobs could be performed as Plaintiff performed them in the following exchange:

7

Q.     Wait a second.  Customer service at NECC could still be done, right?

A.     Yeah.  Those two jobs could be performed.

Q.     Well, not at sedentary.  Yes, as he did it.  I am sorry.

A.     As he performed it, yes.

(*Id.* at PageID.99).  The VE confirmed that either job would provide Plaintiff flexibility to work seated or standing.  (*Id.* at PageID.99–100, 102).  Further, the jobs would still be available if the individual were (i) limited to using their upper extremities for grasping, gross manipulation on a frequent basis, (ii) had a limitation for using foot controls for both lower extremities on a frequent basis, or (iii) had a limitation for using foot controls as to his left lower extremity on an occasional basis.  (*Id.* at PageID.100, 101).  However, if the individual had a limitation where his nondominant right upper extremity was reduced to occasional for grasping, gross manipulation, and fine manipulation.  (*Id.*).  Further, if the employee were off task 10 percent or more during the work day or absent from work one day a month on a regular and consistent basis these would be grounds for termination.  (*Id.* at PageID.102).  The VE confirmed his testimony was consistent with the DOT and the SCO, but noted that areas not addressed in the DOT "such as absenteeism, time off work, time away from work, use of foot controls, [. . .] the sit/stand options," whether certain skills transfer, and limitation for using one hand less than the other were based on his professional experience and/or training.  (*Id.* at PageID.101).

## F.  Governing Law

The ALJ must "consider all evidence" in the record when making a disability decision.  42 U.S.C. § 423(d)(5)(B).  The newly promulgated regulations, applicable to

applications for disability benefits filed on or after the effective date of March 27, 2017,

distinguish between acceptable medical sources, medical sources and nonmedical

sources.  An acceptable medical source means a medical source who is a:

(1)     Licensed physician (medical or osteopathic doctor);

(2)     Licensed Psychologist, which includes:

    (i)     A licensed or certified psychologist at the independent practice level; or

    (ii)    A licensed or certified school psychologist, or other licensed or certified individual with another title who performs the same function as a school psychologist in a school setting, for impairments of intellectual disability, learning disabilities, and borderline intellectual functioning only;

(3)     Licensed optometrist for impairments of visual disorders, or measurement of visual acuity and visual fields only, depending on the scope of practice in the State in which the optometrist practices;

(4)     Licensed podiatrist for impairments of the foot, or foot and ankle only, depending on whether the State in which the podiatrist practices permits the practice of podiatry on the foot only, or on the foot and ankle;

(5)     Qualified speech-language pathologist for speech or language impairments only. For this source, qualified means that the speech-language pathologist must be licensed by the State professional licensing agency, or be fully certified by the State education agency in the State in which he or she practices, or hold a Certificate of Clinical Competence in Speech-Language pathology from the American Speech-Language-Hearing Association;

(6)     Licensed audiologist for impairments of hearing loss, auditory processing disorders, and balance disorders within the licensed scope of practice only [];

(7)     Licensed Advanced Practice Registered Nurse, or other licensed advanced practice nurse with another title, for impairments within his or her licensed scope of practice []; or

(8)   Licensed Physician Assistant for impairments within his or her licensed scope of practice [].

20 C.F.R. § 404.1502(a).

A medical source is "an individual who is licensed as a healthcare worker by a State and working within the scope of practice permitted under State or Federal law, or an individual who is certified by a State as a speech-language pathologist or a school psychologist and acting within the scope of practice permitted under State or Federal law." *Id.*, § 404.1502(d).

In contrast, a nonmedical source means "a source of evidence who is not a medical source." *Id.*, § 404.1502(e). "This includes, but is not limited to: (1) You; (2) Educational personnel (for example, school teachers, counselors, early intervention team members, developmental center workers, and daycare center workers); (3) Public and private social welfare agency personnel; and (4) Family members, caregivers, friends, neighbors, employers, and clergy." *Id.*

The SSA "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical findings, including those from your medical sources." *Id.*, § 404.1520c(a). "The most important factors we consider when we evaluate the persuasiveness of medical opinions and prior administrative medical findings are supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section)." *Id.* The SSA will consider several factors

when it contemplates "the medical opinion(s) and prior administrative medical findings" in a case. *Id.*

Of these factors, the first is "supportability." This factor considers that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be[.]" *Id.*, § 404.1520c(c)(1).

The SSA will also consider the "consistency" of the claim. This includes the consideration that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be[.]" *Id.*, § 404.1520c(c)(2).

In addition, the SSA will consider the "[r]elationship with claimant[.]" *Id.*, § 404.1520c(c)(3). This factor will include the analysis of:

(i)    Length of the treatment relationship. The length of time a medical source has treated you may help demonstrate whether the medical source has a longitudinal understanding of your impairment(s);

(ii)    Frequency of examinations. The frequency of your visits with the medical source may help demonstrate whether the medical source has a longitudinal understanding of your impairment(s);

(iii)    Purpose of the treatment relationship. The purpose for treatment you received from the medical source may help demonstrate the level of knowledge the medical source has of your impairment(s);

(iv)    Extent of the treatment relationship. The kinds and extent of examinations and testing the medical source has performed or ordered

11

from specialists or independent laboratories may help demonstrate the
level of knowledge the medical source has of your impairment(s);

(v)    Examining relationship. A medical source may have a better
understanding of your impairment(s) if he or she examines you than if
the medical source only reviews evidence in your folder[.]

*Id.* The fourth factor of the SSA's analysis is "specialization." In making this

determination, the SSA will consider "[t]he medical opinion or prior administrative

medical finding of a medical source who has received advanced education and training to

become a specialist may be more persuasive about medical issues related to his or her

area of specialty than the medical opinion or prior administrative medical finding of a

medical source who is not a specialist in the relevant area of specialty." *Id.*, §

404.1520c(c)(4).

Finally, the SSA will consider "other factors." These may include any other factors

that "tend to support or contradict a medical opinion or prior administrative medical

finding." *Id.*, § 404.1520c(c)(5). "This includes, but is not limited to, evidence showing

a medical source has familiarity with the other evidence in the claim or an understanding

of our disability program's policies and evidentiary requirements." *Id.* Further, when the

SSA considers "a medical source's familiarity with the other evidence in a claim, we will

also consider whether new evidence we receive after the medical evidence source made

his or her medical opinion or prior administrative medical finding makes the medical

opinion or prior administrative medical finding more or less persuasive." *Id.*

As to the duty to articulate how persuasive the medical opinions and prior

administrative medical findings are considered, the new regulations provide "articulation

requirements." The ALJ will consider "source-level articulation." Pursuant to this requirement, "[b]ecause many claims have voluminous case records containing many types of evidence from different sources, it is not administratively feasible for [the ALJ] to articulate in each determination or decision how [he or she] considered all of the factors for all of the medical opinions and prior administrative medical findings in [each] case record." *Id.*, § 404.1520c(b)(1).

"Instead, when a medical source provides multiple medical opinion(s) or prior administrative finding(s), [the ALJ] will articulate how [he or she] considered the medical opinions or prior administrative findings from that medical source together in a single analysis using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate." *Id.* The regulation reiterates that the ALJ is "not required to articulate how [he or she] considered each medical opinion or prior administrative finding from one medical source individually." *Id.*

The regulations stress that the "factors of supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section) are the most important factors we consider when we determine how persuasive we find a medical source's medical opinions or prior administrative medical findings to be." *Id.*, § 404.1520c(b)(2). As such, the SSA "will explain how we considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in your determination or decision. We may, but are not required to, explain how we considered the factors in paragraphs (c)(3) through (c)(5) of this section, as appropriate, when we

articulate how we consider medical opinions and prior administrative medical findings in your case record." *Id.*

When medical opinions or prior administrative findings are "equally persuasive," "well-supported" and "consistent with the record" "about the same issue," "but are not exactly the same, [the ALJ] will articulate how [he or she] considered the other most persuasive factors[] for those medical opinions or prior administrative medical findings in [the claimant's] determination or decision." *Id.*, § 404.1520c(b)(3).

The regulations clarify that the SSA is "not required to articulate how we considered evidence from non-medical sources using the requirements of paragraphs (a) through (c) of this section." *Id.*, § 404.1520c(d).

In addition, the regulations expressly state that the SSA will not consider "evidence that is inherently neither valuable nor persuasive" and "will not provide any analysis about how we considered such evidence in our determination or decision, even under § 404.1520c." *Id.*, § 404.1520b(c). The regulations categorize evidence that is inherently neither valuable nor persuasive as: "[d]ecisions by other governmental and nongovernmental entities;" "[d]isability examiner findings," meaning, "[f]indings made by a State agency disability examiner made at a previous level of adjudication about a medical issue, vocational issue, or the ultimate issue about whether you are disabled;" and "[s]tatements on issues reserved to the Commissioner[;]" these statements include:

(i) Statements that you are or are not disabled, blind, able to work, or able to perform regular or continuing work;

14

(ii)   Statements about whether or not your impairment(s) meets or medically equals any listing in the Listing of Impairments[];

(iii)  Statements about what your residual functional capacity is using our programmatic terms about the functional exertional levels [] instead of descriptions about your functional abilities and limitations[];

(iv)   Statements about whether or not your residual functional capacity prevents you from doing past relevant work[];

(v)    Statements that you do or do not meet the requirements of a medical-vocational rule[]; and

(vi)   Statements about whether or not your disability continues or ends when we conduct a continuing disability review[.]

*Id.*, § 404.1520b(c).

The regulations also provide that "[b]ecause a decision by any other governmental and nongovernmental entity about whether you are disabled, blind, employable, or entitled to any benefits is based on its rules, it is not binding on us and is not our decision about whether you are disabled or blind under our rules." *Id.*, § 404.1504.  Therefore, the Commissioner "will not provide any analysis in our determination or decision about a decision made by any other governmental or nongovernmental entity about whether you are disabled, blind, employable, or entitled to benefits." *Id.*  The Commissioner will, however, "consider all of the supporting evidence underlying the other governmental or nongovernmental entity's decision that we receive as evidence in your claim[.]" *Id.*

The regulations clarify that "[o]bjective medical evidence means signs, laboratory findings, or both." *Id.*, § 404.1502(f).  Signs are defined as "one or more anatomical, physiological, or psychological abnormalities that can be observed, apart from your

statements (symptoms)." *Id.* Further, "[s]igns must be shown by medically acceptable clinical diagnostic techniques. Psychiatric signs are medically demonstrable phenomena that indicate specific psychological abnormalities, e.g., abnormalities of behavior, mood, thought, memory, orientation, development or perception, and must also be shown by observable facts that can be medically described and evaluated." *Id.*, § 404.1502(g). Laboratory findings "means one or more anatomical, physiological, or psychological phenomena that can be shown by the use of medically acceptable laboratory diagnostic techniques[,]" and "diagnostic techniques include chemical tests (such as blood tests), electrophysiological studies (such as electrocardiograms and electroencephalograms), medical imaging (such as x-rays), and psychological tests." *Id.*, § 404.1502(c).

The most recent amendments to the regulations also tweaked the manner in which the SSA evaluates symptoms, including pain. "In considering whether you are disabled, we will consider all your symptoms, including pain, and the extent to which your symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence. We will consider all your statements about your symptoms, such as pain, and any description your medical sources or nonmedical sources may provide about how the symptoms affect your activities of daily living and your ability to work[.]" *Id.*, § 404.1529(a).

But the SSA clarified, "however, statements about your pain or other symptoms will not alone establish that you are disabled. There must be objective medical evidence from an acceptable medical source that shows you have a medical impairment(s) which

could reasonably be expected to produce the pain or other symptoms alleged and that, when considered with all of the other evidence (including statements about the intensity and persistence about your pain or other symptoms which may reasonably be accepted as consistent with the medical signs and laboratory findings), would lead to a conclusion that you are disabled." *Id.*, § 404.1529(a).

Further, "[i]n evaluating the intensity and persistence of your symptoms, including pain, we will consider all of the available evidence, including your medical history, the medical signs and laboratory findings, and statements about how your symptoms affect you." *Id.*, § 404.1529(a). The SSA clarified that it will "then determine the extent to which your alleged functional limitations and restrictions due to pain or other symptoms can reasonably be accepted as consistent with the medical signs and laboratory findings and other evidence to decide how your symptoms affect your ability to work." *Id.*

Finally, the SSA noted that "[b]ecause symptoms sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone, we will carefully consider any other information you may submit about your symptoms." This other information may include "[t]he information that your medical sources or nonmedical sources provide about your pain or other symptoms (e.g., what may precipitate or aggravate your symptoms, what medications, treatments or other methods you use to alleviate them, and how the symptoms may affect your pattern of daily living)," which "is also an important indicator of the intensity and persistence of your symptoms." *Id.*, § 404.1529(c)(3).

17

"Because symptoms, such as pain, are subjective and difficult to quantify, any symptom-related functional limitations and restrictions that your medical sources or nonmedical sources report, which can reasonably be accepted as consistent with the objective medical evidence and other evidence, will be taken into account…We will consider all of the evidence presented, including information about your prior work record, your statements about your symptoms, evidence submitted by your medical sources, and observations by our employees and other persons[.]" *Id.* The regulations establish that "[f]actors relevant to your symptoms, such as pain, which we will consider include []:

(i)    [D]aily activities;

(ii)   The location, duration, frequency, and intensity of . . . pain;

(iii)  Precipitating and aggravating factors;

(iv)   The type, dosage, effectiveness, and side effects of any medication . . . taken to alleviate . . . pain or other symptoms;

(v)    Treatment, other than medication, . . . received for relief of . . . pain;

(vi)   Any measures . . . used to relieve . . . pain.

*Id.*

The new regulations also impose a duty on the claimant: "In order to get benefits, you must follow treatment prescribed by your medical source(s) if this treatment is expected to restore your ability to work." *Id.*, § 404.1530(a). Stated differently, "[i]f you do not follow the prescribed treatment without a good reason, we will not find you disabled or, if you are already receiving benefits, we will stop paying you benefits." *Id.*,

§ 404.1530(b).  Acceptable (or "good") reasons for failure to follow prescribed treatment include:

(1)    The specific medical treatment is contrary to the established teaching and tenets of your religion;

(2)    The prescribed treatment would be cataract surgery for one eye, when there is an impairment of the other eye resulting in a severe loss of vision and is not subject to improvement through treatment;

(3)    Surgery was previously performed with unsuccessful results and the same surgery is again being recommended for the same impairment;

(4)    The treatment because of its magnitude (e.g. open heart surgery), unusual nature (e.g., organ transplant), or other reason is very risky for you; or

(5)    The treatment involves amputation of an extremity, or major part of an extremity.

*Id.*, § 404.1530(c).

## G.  Arguments and Analysis

Under 42 U.S.C. 405(g), the Court may remand a case under two separate circumstances: a "sentence four" or "sentence six" remand.  Under a sentence four remand, a court has the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g).  A sentence six remand is appropriate "only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding."  *See id.*  The remand is due to new evidence "that was not available to the claimant at the time of the administrative proceeding and that . . .

19

might have changed the outcome of the prior proceeding." *Melkonyan v. Sullivan,* 501 U.S. 89, 98 (1991).

Plaintiff carries the burden to demonstrate the proffered evidence is "new" and "material" and that there is "good cause" for failing to present it in the prior proceeding. *Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 483 (6th Cir. 2006).  Further, the plaintiff must explain why the evidence was not obtained earlier and submitted to the ALJ prior to the issuance of the ALJ's decision.  *Id.* at 485.  Additionally, to establish materiality Plaintiff must show that the proffered evidence would have reasonably persuaded the Commissioner to arrive at an alternative conclusion.  *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001); *Sizemore v. Sec'y of Health & Human Servs.*, 865 F.2d 709, 711 (6th Cir. 1988).

Plaintiff's only claim at this stage is that his submission of "new and material evidence" following the ALJ's unfavorable decision renders the decision unsupported by substantial evidence.  (ECF No. 10, PageID.1272).  He argues that the Morepace payroll statements, dated January 3, 2010 through December 23, 2010,  referenced in the February 10, 2022 brief submitted to the Appeals Council, qualify as new evidence which warrants a sentence six remand.  (*Id.* at PageID.1277).  The payroll statements show Plaintiff's total earnings from Morepace for that time period to be $11,270.68, averaging out to 939.22 monthly.  (*Id.* at PageID.1277).  Plaintiff argues the new evidence is material as "there is a reasonable probability the ALJ would have reached a different decision if the evidence had been presented during the administrative hearing."  (*Id.*).  If the payroll

statements had been presented at the administrative hearing, the ALJ would have had evidence that the Plaintiff worked 12 months which would have changed the analysis of the work in terms of SGA.  (*Id.* at PageID.1277–78).  Second, "good cause" existed for Plaintiff not submitting the payroll records until after the December 31, 2021 hearing because during the hearing the ALJ indicated she was including the Morepace employment as past relevant work and it took Plaintiff time to locate the detailed payroll records.  (*Id.* at PageID.1278).

In response, the Commissioner counters that Plaintiff "has failed to show that the evidence submitted to the Appeals Council was new or that he had good cause for not presenting it during the administrative proceedings" before the ALJ.  (ECF No. 12, PageID.1310).  First, for the payroll records to qualify as new they "could 'not [be] in existence or available to the claimant at the time of the administrative proceeding."  (*Id.* at PageID.1314 (citing *Sullivan v. Finkelstein*, 496 U.S. 617, 626 (1990)).  As the records were generated and printed in 2010, pursuant to the record annotations, they do not constitute new evidence.  (*Id.* at PageID.1314).  Second, Plaintiff fails to show good cause for why the records were not submitted during the administrative proceedings before the ALJ.  (*Id.* at PageID.1314).  Plaintiff was made aware before the hearing that his work history was an issue that would be adjudicated during the proceeding.  (*Id.* at PageID.1315 (citing ECF No. 6, pageID.250)).  During the hearing, the ALJ made clear that the length of employment at Morepace was critical.  (*Id.* at PageID.1315 (citing ECF No. 6, PageID.85–86)).  And although his counsel asserted at the end of the hearing that the job

did not qualify as SGA, Plaintiff's counsel did not seek to have the record remain open to submit evidence supporting this contention. (*Id.* at PageID.1315).

### a. Plaintiff's Detailed Payroll Records Do Not Qualify as New

Evidence is considered new only if it was "not in existence or available to the claimant at the time of the administrative proceeding." *Hughes v. Comm'r of Soc. Sec.*, No. 07-CV-11920, 2008 WL 4279375, at *2 (E.D. Mich. Sept. 17, 2008). In *Hughes*, the court held the doctor's report qualified as "new evidence" because plaintiff submitted a request for the report prior to the administrative hearing but unfortunately the doctor did not provide plaintiff with report until after the ALJ concluded the hearing. No. 07-CV-11920, 2008 WL 4279375, at *3 (E.D. Mich. Sept. 17, 2008). A comparison of *Hughes* to the case at hand highlights the tenuous nature of Plaintiff's arguments. His explanation as to why the payroll records should be considered "new" is because the evidence was not "associated with the agency file and therefore [ ] not a part of the current transcript." (ECF No. 10, PageID.1277). It is understandable that a party may receive an incomplete file from a third party but the submission of an incomplete file will not deem the supplemental pages, submitted at a later date, new evidence. This point is demonstrated in *Bialo v. Commissioner of Social Security*, where the Court found a "missing page of [a] report was not new and thus did not satisfy the criteria for a sentence six remand [. . . ]." No. 17-12384, 2019 WL 1349609, at * 1 (E.D. Mich. Mar. 26, 2019). Plaintiff provides no explanation as to why the documents were not included in his original

submission[1] and as highlighted by the Commissioner, the date stamp on the records shows the documents were generated and printed in 2010 which means that they were "in existence" at the time of the proceeding.  (ECF No. 10-1, PageID.1281–1306).  Thus, Plaintiff's failure to include the payroll records in the record does not adorn the documents with the status of "new evidence" under 42 U.S.C. § 405(g).

### b.  Plaintiff's Detailed Payroll Records Are Material

Plaintiff alleges that if the ALJ found his Morepace employment no longer qualified as "past relevant work" because it failed to meet the monthly earnings income of $1,000, and therefore was not SGA, then Plaintiff would have been found disabled per the VE testimony and Medical Vocational Rule 201.06.  (ECF No. 10, PageID.1278). His argument appears to rely on the ALJ's testimony that if either the customer service representative or survey worker clerk  positions were not relevant Plaintiff "would grid." (ECF No. 6, PageID.99).   However, Plaintiff raises this argument in a rather passing fashion and spends only one short paragraph discussing it.  This fleeting paragraph fails to fully discuss the argument he is raising and is notably missing supporting testimony, evidentiary citations, or caselaw.  (ECF No. 10, PageID.1277–78).  In instances such as this, the Court has the discretion not to address such an argument.  *See Shamsud-Din v. Comm'r of Soc. Sec.*, No. 16-cv-11818, 2017 WL 3574694, at *4 (E.D. Mich. July 24,

---

[1] Plaintiff does not argue that the records were not available at the time of the administrative proceeding and the undersigned will not venture to do so on his behalf.  *Hollon*, 447 F.3d 477, 490–91 (6th Cir. 2006) (court declines to formulate arguments on plaintiff's behalf when plaintiff has made little effort to do so).

2017) (undeveloped arguments need not be address by the court as "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are dement waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones.") (citation and internal quotation marks omitted). But despite the undeveloped nature of this argument, the undersigned finds that Plaintiff raises a good point as to the material nature of the detailed payroll records. If the ALJ were to find that Plaintiff's survey worker clerk position no longer qualified as SGA, it is possible the ALJ would find that he should grid and thus the proffered evidence is material. However, a finding of materiality does not automatically warrant remand under sentence six, and as such it is appropriate to discuss whether Plaintiff has established good cause.

### c. Plaintiff Has Not Shown Good Cause For the Exclusion of the Detailed Payroll Records from the Record

A "plaintiff attempting to introduce new evidence must explain why the evidence was not obtained earlier and submitted to the ALJ before the ALJ's decision." *Collins v. Comm'r of Soc. Sec.*, NO. 10-15000, 2011 WL 6654467, at *2 (E.D. Mich. Nov. 9, 2011). The undersigned finds that Plaintiff has not provided "good cause" for failing to present the detailed payroll evidence in the prior proceeding. *Hollon*, 447 F.3d at 483. Plaintiff's reason for not presenting the detailed payroll records at the administrative hearing appears to because the detailed earnings query included in the record at the time of the administrative hearing appeared to indicate, incorrectly, that Plaintiff was employed for

the entirety of 2010 (ECF No. 10, PageID.1278 (citing ECF No. 6, PageID.311)) which resulted in the ALJ indicating she was considering including the Morepace employment as "past relevant work."  (ECF No. 10, PageID.1278 (citing ECF No. 6, PageID.86)).  And following the ALJ's ultimate decision Plaintiff had to locate the detailed payroll records which took time.  (ECF No. 10, PageID.1278–79).

A review of the hearing records shows that Plaintiff believed that the record was complete at the time of the hearing and took no steps to preserve the right to proffer additional evidence showing that his work as a survey worker clerk did not qualify as SGA.  Plaintiff's counsel noted at the beginning of the hearing that the record was complete.  (ECF No. 6, PageID.66).  After indicating as much, the ALJ admitted all of the documents presented and that the record was closed as Plaintiff's counsel indicated it was complete.  (*Id.* at PageID.67).  At the end of the hearing, Plaintiff's counsel raised the argument that Plaintiff's Morepace employment should not qualify as SGA but did not request that the record remain open to submit additional evidence supporting said contention.[2]  (*Id.* at PageID.103).  While Plaintiff explains why it took an extended period of time for him to submit the detailed payroll records after the December 13, 2021 administrative hearing, his brief does not mention when he submitted a request for the

_____

[2] At the end of his brief, Plaintiff's counsel mentions in one brief sentence the fact that during the hearing he raised the issue as to whether Plaintiff's employment at Morepace should qualify as "past relevant work" ((ECF No. 10, PageID.1279 (citing ECF No. 6, PageID.40)).  If Plaintiff is trying to suggest that because he raised the argument, he left the door open to submit additional information, he did not include an adequate amount of information to raise this contention, much less to defend this position.

25

detailed payroll records, why the documents were not obtained before the administrative hearings, and most importantly why he did not request that the record remain open until the additional payroll records were submitted. Plaintiff's failure to request the record remain open is most instructive as to why Plaintiff has not established good cause warranting a sentence six remand. "Where the transcript of a hearing before the ALJ clearly indicates that claimant's attorney did not seek to have the record remain open until such time as other evidence could be made a part of the record, suggests that the claimant considered the evidence before the ALJ to be complete and sufficient to support his claim." *Collins,* 2011 WL 6654467, at *4. Thus, Plaintiff has not established good cause.

Based, on the foregoing the undersigned finds Plaintiff's position unpersuasive as he has not established that the proffered evidence is new or that good cause existed. Accordingly, neither summary judgment nor remand for Plaintiff are warranted.

### H. Conclusion

For these reasons, I recommend **DENYING** Plaintiff's motion, (ECF No. 10), **GRANTING** the Commissioner's motion, (ECF No. 12), and the Commissioner's final decision be **AFFIRMED** as it is supported by substantial evidence.

### III. <u>REVIEW</u>

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a

26

copy." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1.) Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981.) The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d.) The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: October 19, 2023                          s/ PATRICIA T. MORRIS
                                                Patricia T. Morris
                                                United States Magistrate Judge